UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CYNTHIA M. GERE,

      Plaintiff,                     Civil Action No. 17-13193

v.                              HON. Judith E. Levy
                                    U.S. District Judge
                                    HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Cynthia M. Gere ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment [Docket #18] be GRANTED, that the case be remanded for an award of benefits, but that the Commissioner make a determination of the onset of disability date. I further recommend that Defendant's Motion for Summary Judgment [Docket #19] be DENIED.

## I.  PROCEDURAL HISTORY

On October 14, 2014, Plaintiff filed applications for DIB and SSI, alleging an onset of disability date of January 1, 2007 (Tr. 158, 160).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on April 26, 2016 in Livonia, Michigan (Tr. 25).  Administrative Law Judge ("ALJ") B. Lloyd Blair presided.  Plaintiff, represented by attorney Elizabeth Warren, testified (Tr. 30-41), as did Plaintiff's mother, Dr. Ann R. Gere (41-58), and Vocational Expert ("VE") Lorraine Castellana (Tr. 59-65).  On May 27, 2016, ALJ Blair determined that Plaintiff was not disabled (Tr. 11-21).  On August 14, 2017, the Appeals Council denied review of the claim (Tr. 1-3).  Plaintiff filed for judicial review of the final decision on September 29, 2017.

## II.  BACKGROUND FACTS

Plaintiff, born July 9, 1969, was 46 at the time of the determination (Tr. 21, 158).  She completed four years of college and worked previously as an art teacher, child care worker, clothes worker at a dry cleaner, food prep worker, and "water girl" at a restaurant (Tr. 183).  Her application for benefits alleges disability as a result of a learning disability, Attention Deficit Hyperactivity Disorder ("ADHD"), Attention Deficit Disorder ("ADD"), seizures, memory loss, depression, manic depression, panic attacks, sleep apnea, emotional outbursts, rage/anger disorder, dizziness, blurred vision, nausea, and fetal alcohol syndrome ("FAS") (Tr. 181).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

She was unable to remember her parents' address (Tr. 31). She stood 5' 5" and weighed 170 pounds (tr. 31). She completed a Bachelor's degree (Tr. 31). She did not have a driver's license (Tr. 31). *The ALJ found that none of Plaintiff's past work activity rose to the level of Substantial Gainful Activity except for the art teacher position* (Tr. 32-33).

Plaintiff was unable to work due to FAS, ADD, ADHD, and bipolar disorder (Tr. 33). She was "in the process" of obtaining psychiatric treatment (Tr. 34). She experienced the side effects of tunnel vision from previously prescribed psychotropic medication (Tr. 34), but was not taking medication at the time of hearing (Tr. 35). She had not had any inpatient psychiatric treatment in the past 12 months (Tr. 35). She did not visit with friends or neighbors but belonged to a group of similarly limited adults (Tr. 35). She did not use illicit substances and no longer used alcohol (Tr. 36). She smoked on rare occasions (Tr. 36). She retired anytime between 10:00 p.m. and 2:00 a.m. (Tr. 36). She volunteered at a homeless shelter (Tr. 37).

Plaintiff experienced panic attacks, bipolar disorder, distractibility, and preoccupation with her daughter's welfare since losing custody (Tr. 38-39). She had not received recent mental health care treatment (Tr. 39).

### B. Testimony by Plaintiff's Mother, Dr. Gere

Dr. Gere teaches English at the University of Michigan (Tr. 41). She and her husband

adopted Plaintiff when she was three and soon noticed problems with "word retrieval" (Tr. 42).  After beginning school, Plaintiff experienced problems in reading, math, and following instructions (Tr. 42-43).  Plaintiff attended special education classes and did not graduate from high school until she was 20 despite the help of her parents and tutors (Tr. 43).  After enrolling at the Center for Creative Studies in Detroit, Plaintiff was unable to pass a beginning writing course (Tr. 44).  To the extent that Plaintiff was required to write about art to pass her classes, Dr. Gere rather than Plaintiff completed the assignments (Tr. 45).  Dr. Gere acknowledged that Plaintiff did not experience difficulty completing the art projects (Tr. 46).  After Plaintiff transferred to the University of Alaska, Dr. Gere persuaded a faculty member to create an individualized program for Plaintiff so she could pass the language and math requirements for teacher certification and graduation (Tr. 47-48).  When Plaintiff began teaching, Dr. Gere helped her with lesson plans and cleaning up the classroom (Tr. 50-51).  Dr. Gere and her husband obtained custody of Plaintiff's daughter after being falsely accused by Plaintiff of abusing the daughter (Tr. 53-54).  The petition for guardianship was precipitated by Plaintiff's failure to take care of her daughter (Tr. 54-55).  Despite Dr. Gere's help, Plaintiff was quickly terminated from the bus person position (Tr. 57).  Dr. Gere believed that due to FAS, Plaintiff experienced ongoing cognitive decline  (Tr. 58).

## C.    Medical Evidence

### 1.  Evidence Related to Plaintiff's Treatment

In May, 2006, Elizabeth Dowell, M.D. found that Plaintiff was capable of childcare

work (Tr. 249).  February, 2007 treating records by Joyce E. Kaferle, M.D. note Plaintiff's report that she wanted custody of her daughter back from her parents (Tr. 250).  Plaintiff reported that she had been going to counseling with her parents but had not seen her daughter recently (Tr. 250).  Dr. Kaferle noted "a very tangential speech and [that] it was quite a task getting information . . ." (Tr. 250).  Dr. Kaferle noted that Plaintiff "just really tended to be a little disorganized as far as her topics of conversation" but did not exhibit a psychosis (Tr. 251).  Dr. Kaferle recommended taking a dose of St. John's wort for depression secondary to situational stressors and an evaluation for ADD (Tr. 251).  The following month, Dr. Kaferle noted that Plaintiff had not followed up with recommendations to take St. John's wort or seek mental health counseling (Tr. 248).  Dr. Kaferle opined that Plaintiff's problems were primarily situational but exacerbated by FAS (Tr. 248).

December, 2012 treating records note that Plaintiff was fully oriented (Tr. 253).  In October, 2013, Plaintiff reported menorrhagia for the past nine months (Tr. 256 *see also* 252-254).  January, 2014 gynecological treating records state that Plaintiff experienced a fibroid condition (Tr. 259).  Plaintiff appeared "teary eyed throughout [the] visit," noting that she had just been divorced (Tr. 259).  Treating notes state that Plaintiff needed to be "redirect[ed]" to address her medical concerns (Tr. 259).  Plaintiff expressed interest "in talking to someone for support" (Tr. 258).  Social worker Margaret Kelly noted that Plaintiff required a case worker's assessment and counseling (Tr. 258).

In April, 2014, Plaintiff again sought treatment for menorrhagia (Tr. 261, 348).

Treating notes state that Plaintiff, currently homeless, "seems to have not recalled elements" of an earlier conversation pertaining to recommended treatment (Tr. 262).  In August, 2014, Plaintiff sought emergency treatment for a suspected spider bite (Tr. 263).  Plaintiff reported that she was currently "living in the woods" (Tr. 263).  She was diagnosed with ringworm and discharged with minconazole cream (Tr. 263, 349).  A review of systems was unremarkable (Tr. 263-264).

The same month, Roger E. Lauer, Ph.D. performed a neuropsychological evaluation, noting Plaintiff's report that she enjoyed socializing, using Facebook, and martial arts (Tr. 274).  Dr. Lauer noted that Plaintiff's parents sought the evaluation to see how FAS had resulted in increased "forgetfulness, difficulty processing and retrieving words, and experiencing strange smells" (Tr. 274).  Plaintiff reported a "sibling-like" relationship with her daughter who was currently cared for by her parents (Tr. 275).  Plaintiff reported that she was currently unemployed and homeless (Tr. 275).

Dr. Lauer noted that Plaintiff exhibited good effort and persistence (Tr. 276).  Speech was deemed clear and coherent but at times tangential (Tr. 276).  She was able to switch between task demands "without difficulty" (Tr. 276).  She exhibited a blunted affect (Tr. 276).  Cognitive testing scores were in the extremely low to average range; language skills, extremely low to average; visual/spatial abilities, extremely low to high average; working memory, extremely low; processing speed, borderline; academic achievement, extremely low to borderline; perceptual and motor abilities, extremely low; attention, extremely low to

-6-

borderline; memory and learning, extremely low to high average; and executive functions, borderline to high average (Tr. 278). Dr. Lauer recommended that Plaintiff obtain permanent housing, undergo psychotherapy, and investigation into whether the conditions of FAS, dyslexia, dyscalculia, ADHD, and "emotional concerns" qualified her for disability benefits (Tr. 280). He also recommended job coaching and placement services provided by Michigan Rehabilitation Services (Tr. 280). He found that Plaintiff could "not be successful with employment that involve[d] multitasking" and required work involving "regular review of information, repetition utilizing demonstrations and examples, and rehearsal of information through pre-organizing, pre-teaching and self-talk" (Tr. 280, 281-286). School records attached to Dr. Lauer's assessment note an average range of intelligence but moderate to marked deficiencies in listening comprehension, written expression, reading, and math (Tr. 287-289). December, 1996 records from the University of Alaska state that Plaintiff lacked the writing skills necessary to become a classroom teacher and that the author was "troubled by idea that most of [Plaintiff's] work was probably completed or heavily edited by other people" (Tr. 292-293).

June, 2015 psychological intake records note Plaintiff's report that she was homeless and unemployed (Tr. 296). She reported that she and a new boyfriend were "on the verge of obtaining housing" (Tr. 296). The intake records note good hygiene, normal speech pattens, and tearfulness (Tr. 297). She exhibited a normal thought process, normal judgment, fair insight, and fair impulse control (Tr. 299). Intake records note that she was not able to

keep "entry level employment even with natural support" (Tr. 301). She was referred for a psychiatric evaluation, possible medication for ADHD, and counseling (Tr. 301). The following month, Plaintiff reported that she had declined to take prescribed psychotropic medicine in the past (Tr. 309). She reported that she was currently living with a boyfriend at her former husband's house (Tr. 309). She expressed anger and depression because her mother currently had a PPO against her which she felt was unjustified (Tr. 309). Plaintiff opined that her ability to complete tasks was getting worse (Tr. 309). She was diagnosed with FAS, ADHD, Post Traumatic Stress Disorder ("PTSD"), and bipolar disorder (Tr. 311, 324). Plaintiff declined to show for followup treatment (Tr. 316, 332, 342, 346-347). Staff notes state that Plaintiff experienced "a developmental disability that has resulted in substantial functional limitations in several major life domains" (Tr. 316).

In March, 2016, Dr. Lauer found that Plaintiff experienced short-term, long-term, and working memory impairment; thinking and mood disturbances; emotional lability and lack of impulse control; and had demonstrated severely impaired neuropsychological abilities (Tr. 354). He found extreme limitation in activities of daily living, social functioning, and concentration, persistence, or pace with "one or two" episodes of decompensation of extended duration (Tr. 355). He noted that Plaintiff's condition was exacerbated by prior sexual assaults (Tr. 356). He found that Plaintiff would be unable to perform even simple work tasks on a full-time schedule (Tr. 356). He found that Plaintiff would be unable to manage her benefits (Tr. 357). He found marked and extreme limitations in memory and

concentration; marked and extreme limitation in social interaction; and moderate, marked, and extreme limitation in adaptation (Tr. 359).  Dr. Lauer found that the same degree of psychological limitation had existed at least as early as the end of 2005 (Tr. 360).

### 2.  Other Source Evidence

In January, 2015, Thomas T. L. Tsai, M.D. performed a non-examining review of the treating records on behalf of the SSA, finding mild restrictions in activities of daily living and social functioning and moderate restriction in concentration, persistence, or pace due to organic mental disorders and anxiety (Tr. 73).  Dr. Tsai concluded that Plaintiff could "understand, remember, and carry out simple instruction," make simple judgments, interact appropriately with supervisor and coworkers, and complete simple one to two-step tasks on a routine and regular basis (Tr. 76).

### D.  Vocational Expert

*Plaintiff's counsel prefaced the testimony by arguing that the condition of FAS met "Listing 12.02," which governs determination of disability due to organic mental disorders* (Tr. 59).

VE Castellana classified Plaintiff's former work as an art teacher as skilled and exertionally light; child care worker, semiskilled/light; and work as a pizza worker and kitchen helper, unskilled/light[1] (Tr. 59-60).  The ALJ then posed the following question to

---

[1]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or

-9-

the VE, describing a hypothetical individual of Plaintiff's age, education, and work background:

> [A]ssume a hypothetical individual meet[s] the demands of unskilled work. She'd only have unskilled work at one, two or three step instructions. No jobs involving concentration and detailed or precision task, multitasking, reading, computer, calculating or problem solving. Should have jobs that do not require teamwork, or working in close proximity of co-workers. Work requiring only brief or superficial contact with the general public. Work that does not require the individual to take initiative, or make independent job decision[s]. And no fast paced work, or work where the pace is set by others. In your opinion could such an individual do claimant's past work? (Tr. 60-61).

The VE responded that the above-stated limitations would preclude all of Plaintiff's past work but would allow the hypothetical individual to perform the exertionally medium, unskilled work of a laundry worker (97,000 jobs in the national economy); sorter (100,000); and other various sorting positions performed at the light exertional level (150,000) (Tr. 61). The VE stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") and information provided by the Bureau of Labor Statistics (Tr. 61-62).

In response to questioning by Plaintiff's counsel, the VE stated that the need to be retrained each work period; be off task for more than 20 percent of the workday; miss two or more days of work a month; take unscheduled work breaks; inability to ask "clarifying

---

carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

-10-

questions" of her supervisor; or, the inability to avoid hazards would preclude competitive work (Tr. 64-65).

### E.    The ALJ's Decision

Citing the medical transcript, ALJ Blair found at Step Two of his analysis that although Plaintiff experienced the severe impairments of "[FAS]; history of learning disability; [ADHD]; depression; and anxiety," none of the conditions met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13-14). The ALJ found that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and in concentration, persistence, or pace (Tr. 14).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") for work at all exertional levels with the following limitations:

> "[S]he is limited to unskilled work with one, two, or three-step instructions; she cannot perform jobs that involve concentration on detailed or precision tasks, multi-tasking, reading, computing, calculating, or problem solving; she is limited to jobs that do not require teamwork or working in close physical proximity of co-workers; she is limited to work that requires only brief or superficial contact with the general public; she is limited to work that does not require her to take initiative or make independent job decisions; and she cannot perform fast-paced work or work where the pace is set by others." (Tr. 15).

The ALJ found that Plaintiff was incapable of returning to her former work, noting that only the art teacher position was performed long enough to qualify as past relevant work (Tr. 19). He found that Plaintiff could work as a laundry worker, sorter, and inspector[2] (Tr. 20).

_____

[2]While the VE stated a third job finding of sorter (light), the ALJ correctly noted that the *DOT* code cited by the VE referred to the job of inspector (Tr. 20, 61). *DOT* code

The ALJ found that a portion of the evidence stood at odds with the allegations of disability, noting that Plaintiff performed substantial gainful activity as an art teacher between 2000 and 2005 (Tr. 16). The ALJ noted that in May, 2006, Plaintiff's primary care provider found that she was in good health (Tr. 16). He observed that in 2007, Plaintiff did not follow up on recommendations to use St. John's wort for depression or seek mental health treatment (Tr. 16). The ALJ accorded "some weight" to Dr. Lauer's September, 2014 findings to the extent that they were consistent with his Step Two findings but discounted his March, 2016 findings of extreme limitation in daily living, social functioning, and concentration (Tr. 18). The ALJ accorded "significant weight to Dr. Tsai's January, 2015 non-examining assessment on the basis that it was "most consistent with the evidence of record as a whole" (Tr. 18). He accorded Dr. Gere's opinion some weight "to the extent that it is corroborated by the other evidence contained within the record . . . " (Tr. 19).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,*

---

727.687-062.

-12-

305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at

step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

Plaintiff makes two arguments for remand, contending first that the ALJ erred by adopting Dr. Tsai's January, 2015 non-examining findings over the March, 2016 findings by consultative examiner Dr. Lauer of mostly marked and extreme psychological limitation. *Plaintiff's Brief,* 14-20, *Docket #18,* Pg ID 453.  Plaintiff argues that the findings of Dr. Lauer and the evidence as a whole supports a Step Three finding of disability under Listing 12.02 (organic mental disorders).  *Id.*; 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.02.[3] Plaintiff argues second that even if she does not meet Listing 12.02, the RFC crafted by the ALJ did not account for her full degree of mental limitation.  *Id.* at 20-24.

Both of Plaintiff's arguments for remand pertain to the relative weight accorded respectively to Dr. Lauer's and Dr. Tsai's findings.  The ALJ accorded "some weight" to Dr. Lauer's September, 2014 findings "to the extent that [they] were consistent with his objective evaluation" but accorded "little weight" to Dr. Lauer's March, 2016 assessment of marked

---

[3]

Dr. Lauer's March, 2016 finding that Plaintiff experienced severely impaired neuropsychological abilities coupled with extreme limitation in activities of daily living, social functioning, and concentration, persistence, or pace (Tr. 354-355) exceeds the requirements for a finding of disability under Listing 12.02.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.02.   Of course, the pertinent question is whether the ALJ erred by declining to adopt Dr. Lauer's opinion in favor of the findings of the earlier non-examining source.

-14-

and extreme limitation, finding that "the evidence of record does not support any of his aforementioned conclusions" (Tr. 18).  In contrast, the ALJ gave "significant weight" to Dr. Tsai's January, 2015 assessment on the basis that it was "most consistent with the evidence of record as a whole" (Tr. 18).  He noted that Plaintiff was able to cook, operate a washer and dryer, use a phone, use public transportation, and volunteer for a charitable organization (Tr. 18).

"The Social Security regulations classify 'acceptable medical sources into three types: nonexamining sources, nontreating (but examining) sources, and treating sources.' " *Brooks v. CSS*, 531 Fed.Appx. 636, 641 (August 6, 2013)(*citing Smith v. CSS*, 482 F.3d 873, 875 (6th Cir. 2007)).  Under the law in effect at the time Plaintiff filed her application for benefits, "a nonexamining source's opinion is [generally] given less deference than an examining source's opinion, which is given less deference than a treating source." *Id.* at 642 (*citing Norris v. CSS*, 461 Fed.Appx. 433, 439 (6th Cir. 2012)).   Thus, Dr. Lauer's examining findings would be entitled to more weight than Dr. Tsai's.  However, "'[i]n appropriate circumstances, opinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources.'" *Brooks* at 642 (*citing* SSR 96–6p, 1996 WL 374180, at *3 (1996)).

The adoption of Dr. Tsai's finding of only mild or moderate psychological limitation is nonetheless problematic.  First, Dr. Tsai's January, 2015 review of the treating and consulting records did not have benefit of the psychological assessments performed in June,

2015 or Dr. Lauer's March, 2016 assessment of Plaintiff's work-related abilities.  It is well established that "updated" medical records are to be accorded more weight than older ones. *Brooks*, 531 Fed.Appx. at 642 (reversing where non-examining source's earlier opinion was adopted over more recent examining findings); *Hamblin v. Apfel*, 2001 WL 345798, *2 (6th Cir. March 26, 2001)(affirming ALJ's rejection of a treating physician's "outdated" opinion on basis consultive physician had performed a more recent appraisal with contradicting findings).  In the instance that "an ALJ relies on a non-examining source who 'did not have the opportunity to review' later submitted medical evidence, especially when that evidence 'reflects ongoing treatment,'" the reviewing court "generally require[s] 'some indication that the ALJ at least considered these new facts before giving greater weight to an opinion that is not based on a review of a complete case record.'" *Brooks* at 642 (*citing Blakley v. CSS*, 581 F.3d 399, 409 (6th Cir. 2009))(internal citations and punctuation omitted).

The ALJ discounted Dr. Lauer's March, 2016 assessment on the basis that the record as a whole did not support a finding of marked or extreme psychological limitation (Tr. 18). Elsewhere, the ALJ acknowledged the June and July, 2015 psychological counseling records post-dating Dr. Tsai's assessment (Tr. 17).  However, the ALJ's four-sentence discussion of the more recent psychological records does not mention that Plaintiff was homeless as of June, 2015; was unable to keep "entry level employment even with natural support;" or, that her adoptive mother had taken out a PPO against her (301, 309).

Plaintiff's inability to procure housing as of June, 2015 undermines Dr. Tsai's earlier

finding that Plaintiff experienced only "mild" restriction in activities of daily living (Tr. 74).[4]

Likewise, the fact that Plaintiff's mother was required to take out a PPO against her suggests more than "mild" limitation in social functioning found by Dr. Tsai (Tr. 74), or even the "moderate" limitation found by the ALJ (Tr. 14).  Likewise, given that June, 2015 records reflect serious psychological dysfunction, the ALJ's rejection of Dr. Lauer's March, 2016 findings because "the evidence of record does not support *any* of his . . . conclusions" is also unsatisfactory (Tr. 18)(emphasis added).

Dr. Tsai's findings are undermined by other portions of the record.  For example, his finding that Plaintiff did not experience any degree of limitation in understanding or memory (Tr. 89), stand directly at odds with Dr. Lauer's September, 2014 finding of "extremely low" working memory skills (Tr. 278).  While the ALJ briefly acknowledged Plaintiff's testimony that she experienced stress as a result of losing custody of her daughter (Tr. 16), he failed to note that Plaintiff's parents obtained guardianship rights after determining that she was psychologically incapable of raising a child (Tr. 54).  St. Louis public school records bear out Dr. Gere's testimony that Plaintiff was unable to work as an art teacher without extensive intervention by an instructional coordinator, counselor, and mentor in addition to Dr. Gere's help in organizing the classroom (Tr. 50-51, 295).

In this regard, the ALJ's conclusion that Plaintiff performed substantial gainful

---

[4] In August of 2014, when Plaintiff was treated for a spider bite and ringworm, she was noted to be "currently living in the woods."  (Tr. 263).

activity as an art teacher, which he found inconsistent with her allegation of disability, is itself poorly supported.  Plaintiff's largely unsuccessful tenure as a teacher in fact meets the test for accommodated work.  *See* 20 C.F.R. § 404.1573(c) ("[i]f your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity"). The factors to be considered in whether the claimant performed accommodated or "sheltered work" consist of the following:

> (1) You required and received special assistance from other employees in performing your work; (2) You were allowed to work irregular hours or take frequent rest periods; (3) You were provided with special equipment or were assigned work especially suited to your impairment; (4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work; (5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or (6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your employer's concern for your welfare. § 404.1573(c).

Factors 1, 3, 4, and 6 apply to Plaintiff's case.  The testimony of her mother, Dr. Gere, shows that throughout her life, and continuing into her work as an art teacher, Plaintiff was unable to function without substantial assistance.  She was in special education classes, and did not graduate from high school until the age of 20.  While enrolled in college classes at the Center for Creative Studies, she could not pass a beginning writing class, and Dr. Gere completed her writing assignments for her.  Likewise at the University of Alaska, Dr. Gere persuaded a faculty member to create an individualized program for Plaintiff so she could pass the language and math requirements for teacher certification and graduation (Tr. 47-48).  This is corroborated by 1996 records from the University of Alaska stating that Plaintiff

-18-

lacked the writing skills necessary to become a classroom teacher and that the author was "troubled by idea that most of [Plaintiff's] work was probably completed or heavily edited by other people" (Tr. 292-293). When Plaintiff began teaching, Dr. Gere helped her with lesson plans and cleaning up the classroom. Even so, a February, 2002 St. Louis Public Schools memorandum entitled "Job Performance" from the principal of the school where Plaintiff was teaching an art class noted her deficiencies despite being provided special assistance:

> "The constant demand for assistance to restore and maintain order in your classroom is a grave concern. Although assistance has been provided by the instructional coordinator, the counselor and your mentor, the most recent incident of students throwing art supplies from the window in your classroom and damaging a car on the street indicate that the situation is not improving." (Tr. 295).

Because Plaintiff's teaching stint was in effect accommodated work, the ALJ erred in deeming it "past relevant work" and–even though he did not make a Step Four non-disability finding–in considering it as evidence inconsistent with Dr. Lauer's conclusions.[5]

The March 16, 2016 assessment–which Dr. Tsai did not consider–shows a significant decline in Plaintiff's functioning since Dr. Lauer first evaluated her in 2014. Even before Dr. Lauer's later evaluation, July, 2015 staff notes from Washtenaw County Community Mental Health reflect substantial functional limitations:

---

[5] Dr. Gere also noted that despite her help, Plaintiff was terminated from her unskilled job as a bus person (Tr. 57). In any event, the ALJ did not find that the bus position lasted long enough to qualify as past relevant work.

"Cindy appears to meet the Michigan Mental Health Code criteria for services
from the Developmental Disabilities Unit of WCCSTS.  She appears to have
a developmental disability that has resulted in substantial functional limitations
in several major life domains.  She does have a college degree and swhe has
obtained some professional jobs early in her life.  However, records available
for this assessment document that she needed significant support to hold these
jobs and even with support she did not hold most of these jobs for very long.
She also has not been able to hold entry level employment even with natural
support."  (Tr. 316)

Dr. Lauer's finding of extreme limitation in activities of daily living, social
functioning, and concentration, persistence, or pace direct a finding of disability at Step
Three of the sequential analysis.  As discussed above, Dr. Tsai's contrary findings are not
supported by substantial evidence, and are contradicted by the great weight of the evidence.
The ALJ's Step Three non-disability finding is likewise not supported by substantial
evidence, and Plaintiff's records–especially those from 2015 onward– clearly support Dr.
Lauer's conclusions. The Plaintiff meets Listing 12.02.  Because "all essential factual issues
have been resolved and the record adequately establishes a plaintiff's entitlement to benefits,"
*Faucher v. HHS,* 17 F.3d 171, 176 (6th Cir. 1994), this case should be remanded for an award
of benefits.

The only remaining question is the proper date of onset of disability for determining
past-due benefits.  The latest date would be the date of her application for benefits, or
logically, the date of Dr. Lauer's March 16, 2016 evaluation that establishes the requirements
of Listing 12.02.  It may be as early as the July, 2015 evaluation by the Washtenaw County
Community Mental Health.  It may or may not be as early as the alleged onset date of January

-20-

1, 2007. Although Plaintiff is entitled to benefits going forward, the resolution of the correct date of onset is properly left to the Commissioner.

## VI.   CONCLUSION

I recommend that the Plaintiff's Motion for Summary Judgment [Docket #18] be GRANTED, that the case be remanded for an award of benefits, and that on remand the Commissioner make a determination of the onset of disability date. I further recommend that Defendant's Motion for Summary Judgment [Docket #19] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall

address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: October 30, 2018

---

**CERTIFICATE OF SERVICE**

I hereby certify on October 30, 2018, I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on October 30, 2018.

s/Carolyn Ciesla
Case Manager to
Magistrate Judge R. Steven Whalen