# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Cynthia M. Gere,

     Plaintiff,   Case No. 17-cv-13193

v.          Judith E. Levy
           United States District Judge
Commissioner of Social Security,

     Defendant.  Mag. Judge R. Steven Whalen

_____/

## OPINION AND ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [21], GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [18], AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [19]

This is a Social Security benefits appeal. On October 30, 2018, Magistrate Judge R. Steven Whalen issued a Report and Recommendation ("R&R") (Dkt. 21) recommending that the Court grant plaintiff's motion for summary judgment (Dkt. 18), deny defendant's motion for summary judgment (Dkt. 19) and remand the case for an award of benefits. Defendant timely filed objections on November 1, 2018. (Dkt. 22.)

## I. Background

In 2014, plaintiff applied for Disability Insurance Benefits and Supplemental Security Income based upon mental and developmental health conditions, including Fetal Alcohol Syndrome ("FAS"), Depression, and Post Traumatic Stress Disorder ("PSTD"). The administrative law judge ("ALJ") denied her application for benefits. She filed for judicial review on September 29, 2017.

The Court has carefully reviewed the R&R and is satisfied that it is a thorough account of the relevant portions of the record. The Court incorporates the factual background from the R&R as if set forth herein. (Dkt. 21 at 2–12.)

## II. Legal Standard

Parties are required to make specific objections to specific errors in a magistrate judge's report and recommendation rather than restate arguments already presented to and considered by the magistrate judge. *Funderburg v. Comm'r of Soc. Sec.*, Case No. 15-cv-10068, 2016 U.S. Dist. LEXIS 36492, at *1 (E.D. Mich. Mar. 22, 2016); *Owens v. Comm'r of Soc. Sec.*, Case No. 12-cv-47, 2013 WL 1304470, at *3 (W.D. Mich. Mar. 28,

2013). The Court reviews proper objections to the magistrate judge's recommended disposition de novo. Fed. R. Civ. P. 72.

## III. Analysis

Defendant has two objections to the R&R. First, defendant objects to Judge Whalen's holding that the ALJ's decision improperly weighed medical evidence. Second, defendant objects to Judge Whalen's recommendation that benefits be awarded rather than the case remanded for further proceedings.

### a. Objection One

Defendant objects to Judge Whalen's finding that the ALJ improperly weighed competing medical evidence.

Review of the ALJ's decision is limited to "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405–06 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence exists if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Id.* at 406 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). The ALJ's decision will stand even if substantial evidence

also supports a different conclusion. *Id.* When determining whether substantial evidence exists, courts must "take into account whatever in the record fairly detracts from its weight." *Austin v. Comm'r of Soc. Sec.*, 714 F. App'x 569, 572 (6th Cir. 2018) (quoting *Beavers v. Sec'y of Health, Educ. and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)).

"In order to determine whether the ALJ acted properly in disagreeing with a medical source, we must first determine the medical source's classification." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). "With regard to nontreating, but examining, sources, the agency will simply '[g]enerally [] give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined' him." *Id.* (quoting 20 C.F.R. § 404.1527(d)(1)). In addition, "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the agency] will give that medical opinion." 20 C.F.R. 404.1527(c)(3). The regulations also direct an ALJ to assign weight to a medical opinion in consideration of "factors [the applicant] or others bring to [the agency's] attention . . . which tend to support or contradict the medical opinion." 404.1527(c)(6).

In some circumstances, an ALJ is entitled to give greater weight to a nonexamining state medical consultant's opinion. She can do so when the state's medical opinion "provides more detailed and comprehensive information than what was available to the individual's treating" or examining source, *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (citing SSR 96-7, 1996 SSR LEXIS *4), or when the nonexamining medical source is "more consistent . . . with the record as a whole." *Id.* (quoting 20 C.F.R. 404.1527(c)(3)). The relative weight given by the ALJ to various medical opinions must be upheld if supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007).

In plaintiff's case, the ALJ gave the following weight to various medical opinions in the record: he gave some weight to an examining opinion from Dr. Roger E. Lauer in 2014 ("2014 evaluation"), significant weight to Dr. Thomas T.L. Tsai, the state's nonexamining consultant's January 2015 determination, and little weight to Dr. Lauer's additional residual functional capacity assessment completed in June 2016 ("2016 assessment"). (Tr. at 18.) The ALJ stated that Dr. Tsai's determination was "most consistent with the evidence of the record as a whole." (*Id.*)

The ALJ believed the "evidence of the record does not support any of [Dr. Lauer's] conclusions" in the 2016 assessment. (*Id.*)

Generally, under the applicable regulation, Dr. Lauer's opinion is afforded more weight, since he is an examining source and his 2014 findings are supported by extensive relevant medical signs and findings. *See* 20 C.F.R. 404.1527(c)(3). Here, Dr. Lauer's 2014 evaluation was supported by extensive diagnostic testing, which the ALJ ignored in his opinion.[1] For example, Dr. Lauer conducted tests including, the Wechsler Adult Intelligent Scale, the Wechsler Individual Achievement Test, Woodcock-Johnson Test, Comprehensive Test of Phonological Processing, and the Brown ADD Scales. Plaintiff consistently scored in the extremely low and borderline ranges (the second percentile and below) on measures such as reading, math, memory, and processing speed. Dr. Lauer's assessment of plaintiff's medical history and testing results led him, in his 2014 evaluation, to recommend "investigating the possibility of Social Security Disability for her due to her limited employment possibilities

---

[1] Although mental or psychiatric impairments are not "readily amenable to substantiation by objective laboratory testing as a medical impairment," the "diagnostic techniques" used by psychology professionals are accepted "unless there are . . . reasons to question the diagnostic techniques." *Brooks*, 531 F. App'x at 643 (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)).

connected to the functional deficits of her disabilities, along with challenges to live independently." (Tr. at 280.) His report constitutes an examining source that is supported by extensive medical findings and therefore must generally be given more weight than a nonexamining source.

The ALJ should have also afforded Dr. Lauer's 2016 assessment more weight than a nonexamining source, as a general matter, because it is an examining source that is consistent with other factors "[brought] to [the agency's] attention . . . which tend to support [his] medical opinion." *See* 20 C.F.R. 404.1527(c)(6). Specifically, Dr. Lauer's 2016 assessment is consistent with the plaintiff's 2015 Washtenaw County Community Mental Health records ("2015 mental health records") and a Function Report authored by plaintiff's mother, both submitted as other relevant factors for the ALJ to consider.

The 2015 mental health records note that plaintiff was homeless at the time and that she needed extensive support with daily activities. The initial notes confirm that although she could cook, she "sometimes forgets to turn [the stove] off." (Tr. at 297.) The records also state that plaintiff needed assistance with scheduling and getting to appointments and that

she had not worked for four to five years because she "was slow and the quality of her work was poor." (*Id.* at 298.) The records also discuss plaintiff's inability to hold an entry level job "even with natural support." (*Id.*) The registered nurse who assessed plaintiff concluded that plaintiff "appears to have a developmental disability that has resulted in substantial functional limitations in several major life domains," and therefore recommended plaintiff get assistance "as needed, in applying for SSI." (*Id.* at 301.) This aligns with Dr. Lauer's 2016 assessment. For instance, Dr. Lauer noted in his 2016 assessment that plaintiff "has struggled with homelessness" (*id.* at 360), and concluded that she has extreme limitations in remembering instructions, sustaining concentration and persistence, and areas of social interaction. (*Id.* at 358–59.)

Plaintiff's mother's report also states that plaintiff is homeless, has never been able to manage money, is easily distracted by others, is unable to follow various forms of instructions, and often "clashes" with authority figures. (*Id.* at 197.) The report concludes that plaintiff is "truly unable to support herself." (*Id.* at 198.) Plaintiff's mother's report is consistent with both Dr. Lauer's original 2014 evaluation that plaintiff's working

memory and her attention skills are in the extremely low range and his 2016 assessment that plaintiff has marked or extreme limitations in all the areas mentioned by her mother.

In turn, Judge Whalen's conclusion that the relative value the ALJ gave to the medical opinions was improper is correct. Despite Dr. Lauer's 2014 evaluation and 2016 assessment being examining sources and both being consistent with relevant evidence in the record, the ALJ gave more weight to Dr. Tsai's nonexamining opinion. But the ALJ is only permitted to give Dr. Tsai's determination more weight if it is "more detailed or comprehensive" or "more consistent with the record as a whole." *See Brooks*, 531 F. App'x at 642. Moreover, as set forth, the Court must account for "anything on the record that fairly detracts" from the evidence relied upon by the ALJ. *See Austin*, 714 F. App'x at 572 (quoting *Beavers*, 577 F.2d at 387).

The ALJ was not permitted to give Dr. Tsai's determination more weight since it is not more comprehensive than either Dr. Lauer's 2014 evaluation or 2016 assessment. Dr. Tsai's determination was completed only four months after Dr. Lauer's initial 2014 evaluation and had little new evidence to draw from. To the Court's knowledge, the only additional

documentation considered by Dr. Tsai was plaintiff's mother's report–dated between Dr. Lauer's 2014 evaluation and Dr. Tsai's report–which ultimately contradicts Dr. Tsai's findings. Moreover, Dr. Tsai's 2015 determination is not more comprehensive than Dr. Lauer's 2016 assessment, which was completed over a year later and thoroughly accounts for plaintiff's continuing homelessness.

Nor is Dr. Tsai's conclusion that plaintiff does not have understanding or memory limitations and that she has "mild" restriction in daily activities consistent with the record as whole. In direct contradiction to Dr. Lauer's findings and plaintiff's mother's report, Dr. Tsai concluded in his determination that there is no evidence that plaintiff has any limitation in sustaining routine without special supervision, working in coordination with others without being distracted, and making simple work-related decisions. (Tr. at 76.) The 2015 mental health records, which note plaintiff's "substantial functional limitations in several major life domains," refute Dr. Tsai's findings. (*Id.* at 301.) Dr. Lauer's subsequent 2016 assessment likewise refutes Dr. Tsai's conclusion by indicating that plaintiff has "extreme" functional limitations in activities of daily living. (*Id.* at 355.)

Contrary to the ALJ's conclusions, and as set forth above, Dr. Lauer's 2014 and 2016 assessments are, in fact, more consistent with the record as a whole. For instance, Dr. Lauer's indication in 2016 that plaintiff had extreme limitations in all but one category of "concentration & persistence" is supported by testing results from his 2014 evaluation. Moreover, reporting by plaintiff's mother confirms plaintiff's inability to concentrate on tasks. Likewise, Dr. Lauer's indication of extreme limitations in various social interaction categories, such as accepting criticism from supervisors, is also supported by his initial evaluation and the subsequent report from plaintiff's mother. In sum, there was ample evidence in the record to support Dr. Lauer's overall conclusion in 2016 that plaintiff's diagnoses and resulting symptoms can "make performance of even simply daily living tasks problematic." (Tr. at 360.)

In other words, "reasonable minds" could *not* accept "the relevant evidence as adequate to support a conclusion" that Dr. Tsai's opinion be given more weight than the two reports by Dr. Lauer. The ALJ was therefore not entitled to give more weight to Dr. Tsai's determination

than either Dr. Lauer's 2014 evaluation or 2016 assessment. Accordingly, defendant's first objection is overruled.[2]

### b. Objection Two

Defendant next objects to Judge Whalen's conclusion that the case be remanded for an immediate award of benefits rather than remand to the ALJ for further factual finding and analysis. The Court reviews the recommendation to award benefits de novo.

"[T]he court can reverse the [ALJ's] decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir.

---

[2] Although not raised specifically in defendant's objections, the Court also agrees with Magistrate Judge Whalen's assessment that the ALJ's finding that plaintiff's years as an art teacher were substantial gainful activity "is . . . poorly supported." (Dkt. 21 at 18.) Her work as a teacher is more appropriately categorized as "accommodated work" under applicable regulations since she "received special assistance" to perform her work, was "assigned work especially suited to [her] impairment," was only able to work under "specially arranged circumstances," such as "other persons help[ing her] prepare for . . . work," and was "given an opportunity to work despite [her] impairment because of a family relationship." *See* 20 C.F.R. § 404.1573(c). For example, a memorandum from plaintiff's supervising principal states: "The constant demand for assistance to restore and maintain order in your classroom is a grave concern. Although assistance has been provided by the instructional coordinator, the counselor and your mentor, the most recent incident of students throwing art supplies from the window in your classroom and damaging a car on the street, indicate that the situation is not improving." (Tr. at 295.)

1994). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Wiser v. Comm'r of Soc. Sec.*, 627 F. App'x 523, 526 (6th Cir. 2015) (quoting *Faucher*, 17 F.3d at 176).

In this case, the ALJ evaluated plaintiff's claim of disability under Listing 12.02, neurocognitive disorders.[3] This listing reads:

> 12.02 Organic Mental Disorders: . . .The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Demonstration of *a loss* of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:
> 1. Disorientation to time and place; or
> 2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to

---

[3] As plaintiff points out, there are new listing criteria that are now applicable to plaintiff's case if remanded for further proceedings. The new standard requires: 12.11 Neurodevelopmental disorders . . . satisfied by A and B:
A. Medical documentation of the requirements of paragraph 1, 2, or 3:
1. One or both of the following:
a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or
b. Hyperactive and impulsive behavior . . .
2. Significant difficulties learning and using academic skills; or . . . [3 omitted]
AND
B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning . . . :
1. Understand, remember, or apply information . . .
2. Interact with others . . .
3. Concentrate, persist, or maintain pace . . .
4. Adapt or manage oneself . . .

remember information that was known sometime in the past); or . . . [*numbers 3-7 omitted*]

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App'x 1 (since amended).

Defendant argues that Judge Whalen erroneously finds overwhelming evidence of Listing 12.02, focusing on the fact that the record does not demonstrate the requisite *loss* or decline in previously

held capabilities. Defendant also takes issue with Judge Whalen's recommendation to remand to identify a date for the onset of the disability. In defendant's view, "[t]he record cannot simultaneously support a finding that Plaintiff met Listing 12.02 as early as March 2007 and show the functional *loss* that Listing 12.02 requires." (Dkt. 22 at 14.) Plaintiff counters that the ALJ did not put Criteria (A) at issue and therefore he must have presumed (A) to have been met in plaintiff's case. (Dkt. 23 at 8.)

Indeed, the ALJ's decision only looks at Criteria (B) and (C) and fails to address Criteria (A). Nonetheless, the Court finds that the factual record is sufficiently developed and "clearly establishes entitlement to benefits." *Faucher*, 17 F.3d at 176.

### i. Listing 12.02, Criteria (A) and (B)

The Court is persuaded that the ALJ never put Criteria (A) at issue and, in effect, assumed the Criteria to have been met. The ALJ appears to have assumed that FAS, at least in plaintiff's case, meets Criteria (A), and moved directly to analyze Criteria (B) and, in the alternative, Criteria (C). This is consistent with the ALJ's conclusion at Step Four of his analysis, agreeing with the vocational expert that "the demands of"

plaintiff's past work as an art instructor "exceed the claimant's residual functional capacity" at the time of the application. (Tr. at 19.) His conclusion that plaintiff is "unable to perform past relevant work" at Step Four (*id.*), is clear recognition that plaintiff has experienced a loss of previous capabilities.

In any case, there is "strong evidence" of Criteria (A) and a lack of evidence to the contrary. Subsection (A) requires, as pertinent to plaintiff, a "[d]emonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of . . . Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past)." 20 C.F.R. Pt. 404, Subpt. P, App'x 1.

Based on the record as a whole, plaintiff's overall trajectory clearly demonstrates a decline in functioning–even if it is also true that plaintiff has a documented history of struggling to maintain employment. The most direct indication of her decline is Dr. Lauer's 2016 assessment indicating that plaintiff has experienced this loss, checking the boxes for short-term, long-term, and working memory loss. (Tr. at 354.) This is

corroborated by plaintiff's mother's testimony that plaintiff's ability to live independently has decreased. (*Id.* at 58 ("And her capacity to even understand things seems much diminished.").)

Defendant takes significant issue with Judge Whalen's reliance on Dr. Lauer's 2016 assessment as evidence of loss. First, defendant believes that it is inappropriate to rely on Dr. Lauer's 2016 assessment as evidence of "a loss" since he relied, at least in part, on his 2014 evaluation. This is unpersuasive. An initial question on the assessment prompts the doctor to indicate whether "the client provided [him] with a history of her condition." (Tr. at 354.) It is reasonable to infer that a doctor used the *history* of her condition in addition to a consultation to form his professional opinion about plaintiff's loss in ability, and marked deficits in functioning, under Criteria (A) and (B).

Defendant also points to question ten in the assessment, for which Dr. Lauer indicates that his "client's mental conditions existed to this degree of severity since at least 12/31/05." (*Id.* at 356.) But Dr. Lauer's opinion explains: "FAS is a static encephalopathy that will not improve over the course of a person's lifetime" and goes on to note that "she has struggled with homelessness leading to inconsistent sleep and eating,

further exacerbating her underlying organic mental disorder." (*Id.* at 360.) The record as a whole supports both conclusions: that plaintiff has a mental disorder that causes her severe impairments and that her ability to learn and function has declined over time. The Court therefore rejects defendant's arguments that Dr. Lauer's 2016 assessment is internally inconsistent, and that it indicates plaintiff has not suffered a loss in functioning.

While plaintiff's FAS condition is static, and, as defendant points out, has caused limitations throughout her life, her loss in functioning is adequately shown in the record. Plaintiff's extensive homelessness and unemployment following 2007 and overall downward trajectory is strong evidence of a loss in functioning and is not contradicted by the evidence identified by defendant. For instance, at least for a short period in the early 2000's, plaintiff maintained a job as an art instructor, albeit with significant support in place. Later, she was unable to maintain a job setting tables even with her mother providing support and supplemental training. Loss is also evident where an individual was able to, with significant support, pursue higher education in the early 2000's, but by 2014, is noted to be "living in the woods" after over a half decade of

unemployment. (*Id.* at 263). In line with this, a 2006 assessment approved plaintiff to work in childcare, whereas Dr. Lauer's 2014 evaluation and the 2015 mental health records conclude that plaintiff should seek disability benefits because of her unemployability. Moreover, nothing in the record contradicts the evidence of plaintiff's decline. Even Dr. Tsai does not indicate that plaintiff is stable in any way.[4] Therefore, even had the ALJ put Criteria (A) at issue, the record adequately establishes it in plaintiff's case.

Listing 12.02 also requires demonstration of Criteria (B). Contrary to the ALJ's conclusion, there is overwhelming evidence that Criteria (B) is met. To demonstrate (B), the record must establish that plaintiff's organic mental disorder has led to at least one of the following: "Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (inapplicable subsections omitted). Not only do both of Dr. Lauer's reports support marked and extreme deficits in all three of these areas, but other

---

[4] Rather, Dr. Tsai, without explanation, indicated in his determination that "[a] medically determinable impairment is present that does not precisely satisfy the diagnostic criteria" under Listing 12.02.

relevant factors in the record consistently demonstrate plaintiff's marked limitations in these areas, as well.

Testing results from Dr. Lauer's 2014 evaluation demonstrate her marked limitations. Under "general cognitive testing," plaintiff's working memory and processing speeds are indicated as "within the extremely low range." (Tr. at 276.) Her attention skills were also found to be "significantly weaker than peers" and in the extremely low range with noted difficulty with inattention and impulsivity. (*Id.* at 278.) In his recommendations, he noted her general "functional deficits" that contribute to her challenge "to live independently." (*Id.* at 280.)

Dr. Lauer's 2016 assessment concludes that plaintiff's limitations are marked, and for many relevant functions, extreme. Among the areas Dr. Lauer found as "marked" limitations are remembering work-like procedures, understanding simple repetitive instructions, making simple work-related decisions, interacting appropriately with customers or with supervisors, and responding appropriately to changes in a work setting. (*Id.* at 358–59.) He notes many areas as being "extreme[ly]" limited, as well, including understanding and remembering instructions that may not be repetitive, and most functions that require sustained

concentration and persistence. (*Id.*) He ultimately concludes that the limitations linked with her FAS make even simple daily living problematic. (*Id.* at 360.)

Moreover, as set forth above, plaintiff's mother's testimony and report, and the 2015 mental health records support Dr. Lauer's findings. Both also note limitations in daily living and difficulties obtaining employment. The medical records in this case demonstrate a clear downward trajectory for plaintiff.

### ii. Criteria (C)

Although not explored by Judge Whalen or the parties, the Court finds that there is also an adequate factual record to establish Criteria (C) as an alternative basis to award benefits.[5] Listing 12.02 is met if plaintiff demonstrates a

> [m]edically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication

---

[5] "Although this Court does not generally raise issues sua sponte, it is warranted in this case." *Trainor v. Comm'r of Soc. Sec.*, No. 13-10093, 2014 U.S. Dist. LEXIS 32840, at *62 (E.D. Mich. Feb. 13, 2014) (citing *Fowler v. Comm'r of Soc. Sec.*, No. 12-12637, 2013 U.S. Dist. LEXIS 137277 (E.D. Mich. Sept. 25, 2013) (finding no error in magistrate judge sua sponte raising the absence of an expert opinion on equivalence)).

or psychosocial support, and one of the [as the relevant to plaintiff] . . . 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App'x 1. The ALJ appears to have assumed the threshold finding of Criteria (C) that plaintiff has a chronic organic mental disorder. This is consistent with Dr. Lauer's descriptions of plaintiff's FAS. Moreover, Dr. Lauer's 2016 assessment said as much when he selected "yes" in response to whether she has "a medically documented history of a chronic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities . . . ." (Tr. at 355.)

The ALJ continued by assessing the additional subcriteria that must be shown under (C). In particular, without any analysis, the ALJ stated regarding Subcriteria (3) that plaintiff "does [not] have a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." (Tr. at 15.) This conclusion is without a foundation. It is directly refuted by the record and fails to consider plaintiff's years of homelessness and unemployment. The records clearly

demonstrate that when plaintiff was not given support by a parent or partner (and even sometimes when she was), plaintiff was frequently homeless and unable to maintain a steady job. There is strong, unrefuted evidence of plaintiff's need for highly supportive living based on her FAS[6], and that she requires structured supports to carry out daily functions.[7]

Having found no error in Judge Whalen's recommendation to award benefits, defendant's second objection is likewise overruled.

### iii. Date of Onset

Defendant takes significant issue with Magistrate Judge Whalen's recommendation to remand for the limited purpose of identifying the date of onset of plaintiff's disability. Defendant's argument on this point is unpersuasive. The record clearly establishes the requisite criteria are

---

[6] One 2015 email from plaintiff to her mother is an illustrative example: "yes mom it looks like stephon is going to be in temporary housing and we need to talk you had wonted this for me… for a long time the only issue we have is paying for electricity not a hard one at all… u will not be paying any rent only I hope help us on electrical." (Tr. at 213 (errors in original).)

[7] Moreover, the applicable listings in this case, if remanded, would not require demonstration of a *loss* of specific cognitive ability. Rather, someone applying for benefits under the applicable Listing 12.16 must only provide medical documentation and evidence of one of multiple possible cognitive limitations. The Court believes there is overwhelming evidence already developed in the record to meet the current requirements that would apply if remanded.

met through strong well-documented and uncontradicted evidence as early as Dr. Lauer's 2014 evaluation when plaintiff had been unemployed for years and was unable to maintain stable housing. Therefore, the latest possible date of disability onset is September 3, 2014.

Nevertheless, Judge Whalen was correct in his recommendation to remand for a determination as to whether an onset date even earlier than September 3, 2014 is appropriate. As for claims dating back to the alleged onset in 2007, the record is not as developed, and the Court is in a poor position to determine this. *Cf. Gutierrez v. Colvin*, 67 F. Supp. 3d 1198, 1205 (D. Colo. 2014) (citing Soc. Sec. Ruling 83-20, 1983 SSR LEXIS 25, at *5 (SSA 1983)). The Court therefore remands to the ALJ to determine the correct date of onset of disability.

## IV. Conclusion

The Court therefore **OVERRULES** defendant's objections (Dkt. 22).

The Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation (Dkt. 21); and

**GRANTS** plaintiff's motion for summary judgment (Dkt. 18) and **DENIES** defendant's motion for summary judgment (Dkt. 19).

The Court **REMANDS** the case to the ALJ for a determination of the date of onset and for an award of benefits.

IT IS SO ORDERED.

Dated: February 20, 2019          s/Judith E. Levy
Ann Arbor, Michigan               JUDITH E. LEVY
                                  United States District Judge

# CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 20, 2019.

s/Karri Sandusky on behalf of
SHAWNA BURNS
Case Manager